**FILED**

AUG 24 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIAM T. HAMPTON, individually and on behalf of all others similarly situated,<br><br>      Plaintiff-Appellant,<br><br> v.<br><br>PACIFIC INVESTMENT MANAGEMENT COMPANY LLC; et al.,<br><br>      Defendants-Appellees. | No. 15-56841<br><br>D.C. No.<br>8:15-cv-00131-CJC-JCG<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted June 7, 2017
Pasadena, California

Before: THOMAS, Chief Judge, REINHARDT, Circuit Judge, and KORMAN,[**] District Judge.

  Because we write only for the parties, we assume familiarity with the facts and prior proceedings in this case. The parties do not dispute that, under the Securities Litigation Uniform Standards Act ("SLUSA"), 112 Stat. 3227 (1998)

---

  [*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.
  [**] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

(codified in relevant part at 15 U.S.C. §§ 77p(b)–(f), 78bb(f)), Hampton's suit raises state-law claims in a "covered class action," *see* 15 U.S.C. § 77p(f)(2), or that all the relevant events took place "in connection with the purchase or sale of a covered security," *see id.* § 77p(f)(3). Nor does Hampton appeal the district judge's conclusion that his claims do not come within what is commonly referred to as the "Delaware carve-out." *See* 15 U.S.C. § 77p(d)(1). Under that provision, covered class actions based on state law are exempt from SLUSA's class-action bar, so long as 1) they are based on the law of the state in which the securities issuer is organized, *id.* § 77p(d)(1)(A), and 2) involve either transactions exclusively between the issuer and its existing stockholders, or a communication the issuer makes to its stockholders respecting the exercise of certain shareholder rights, *id.* § 77p(d)(1)(B). The district judge held that Hampton's claims—which he asserts under Massachusetts law against a Massachusetts trust—satisfied the carve-out's first prong but not the second. Hampton does not argue otherwise here.

In this memorandum disposition, we address only whether Hampton "alleg[es]" a material falsehood or omission. *See* 15 U.S.C. § 77p(b)(1). We address whether his claims should have been dismissed with or without prejudice in a simultaneously-filed opinion. SLUSA applies only to private plaintiffs "alleging" an untrue statement or omission of material fact. As Hampton points out, however, his complaint is carefully drafted to 1) avoid making any such allegations expressly, and

2) plead contract and fiduciary duty claims that do not depend on any showing of false statements. Under well-established law, that is not enough to avoid SLUSA's class-action bar.

Off the bat, the basic principles underlying SLUSA disfavor Hampton's narrow, technical approach. Most fundamentally, as the Supreme Court counseled in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006), interpreting the statute starts with the "presumption that Congress envisioned a broad construction," of SLUSA in order to effectuate its "stated purpose" of preventing state-law claims from making an end-run around the safeguards imposed by the Private Securities Litigation Reform Act.

For that reason, courts broadly recognize that SLUSA's applicability does not depend on whether the plaintiff *expressly* makes the predicate allegations. We "look to the substance of the allegations," rather than the presence or absence of "magic words," precisely because doing otherwise would allow even minimally competent plaintiffs to circumvent Congress's purpose "through artful pleading that removes the covered words but leaves in the covered concepts." *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1115 (9th Cir. 2013) (quoting *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310–11 (6th Cir. 2009) (internal modifications omitted)).

SLUSA's "alleging" standard is satisfied when "deceptive statements or conduct form the gravamen or essence of the *claim*." *Id.* (emphasis added).

Deception forms the essence of a claim when its core factual allegations, taken as true and viewed as a whole, show a likelihood that the defendant made a materially misleading statement. The question is not whether some reading of some facts in the complaint might support an inference of falsity, but whether the allegations underlying a given claim—the facts essential to its theory of the defendant's liability—"make it *likely*" that the case will wind up centering on a materially misleading statement or omission. *See Brown v. Calamos*, 664 F.3d 123, 128–29 (7th Cir. 2011) (emphasis added).

Hampton's claims are bottomed on the following facts: 1) The Total Return Fund was an open-end fund engaged in a continuous offering of shares; 2) the Fund's offering documents stated that it would follow the Emerging Markets Policy; 3) those documents were effective through the entire class period; and 4) *during the same period*, the Fund adopted an aggressive emerging markets strategy which entailed accumulating a larger position in those assets than the Emerging Markets Policy would allow. Although Hampton styles these allegations in terms of contractual and fiduciary duties, the complaint unmistakably describes PIMCO Funds telling its investors it would do one thing—limit its exposure to certain risky assets—while it was in fact, *at the same time*, doing another—betting big on those same assets. The fact that PIMCO Funds promised to follow one course of action, at the same time as it did the exact opposite, raises the likelihood of falsity that SLUSA

4

requires.

Hampton contends that the prospectus's statement committing the Fund to the Emerging Markets Policy could not, in fact, have been false at the time it was made. He points out that the Fund first announced the policy well before the class period (April 1 through September 12, 2014), and adhered to it at least until April of 2014.[1] Therefore, Hampton argues, this is a straightforward case of a promise made once, kept for a while, and then broken later, without the implication of falsity that arises from simultaneously saying one thing and doing another. The problem with that argument, as the defendants point out, is that the statement was made more than once. As an open-end fund, the Total Return Fund was by definition engaged in a continuous offering of shares, effected through the dissemination of a prospectus, the statements in which were effectively "made" every day the prospectus was put forward to solicit new investors, including during the period where the Emerging Markets Policy had become a lie. The fact that the statement of policy was true at some prior point in time is irrelevant; the complaint unambiguously alleges facts demonstrating that it was also made while the Fund was over the 15% cap, which is

---

[1] The complaint does not allege a specific date on which the Fund exceeded its 15% cap on emerging markets investments. Rather, it points to the Fund's quarterly reports to allege that at the close of the quarter ending March 31, 2014, the Fund was under the cap, and at the beginning of the quarter starting July 1, 2014, it had exceeded the cap. This explains why the class period begins on April 1, 2014—the first day of the fiscal quarter during which the cap was first breached. The exact date on which that breach first occurred, however, remains unknown.

enough to raise a likelihood that PIMCO Funds made an untrue statement of material fact relevant to the core of Hampton's claim, and to bar Hampton's suit under SLUSA.[2]

That strong implication of falsity distinguishes this case from *Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002), and *Freeman Investments, L.P. v. Pacific Life Insurance Co.*, 704 F.3d 1110 (9th Cir. 2013), in which we held that SLUSA did not bar claims for breach of contract. Hampton leans heavily on those cases, arguing that he, too, pleads only "garden variety" claims for breach of contract and fiduciary duty. *Freeman* and *Falkowski* are inapposite, however, because neither of those cases involved any allegations—beyond the bare fact of a broken promise—suggesting that the statements at issue were false when made. To be sure, given a broken promise, one can always infer the possibility that the promisor lied when they made it—but unlike in the cases upon which Hampton relies, the facts alleged here are enough to tip a possibility of falsity into a likelihood. *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[T]he plaintiffs . . . have not nudged their claims across the line from conceivable to plausible . . . .").

Hampton's remaining two arguments against SLUSA's applicability similarly

---

[2] Hampton seeks to represent all persons who purchased or otherwise acquired Fund shares during the entire class period. He does not raise, and we do not address, the question of whether a class composed only of people who bought shares while the Emerging Markets Policy was still being followed would have their claims barred by SLUSA on account of the policy later becoming false.

fail. First, Hampton makes much of the fact that he does not allege the defendants "never intended" to follow the Emerging Markets Policy—that is to say, that he does not allege fraud. But SLUSA is not limited to barring claims based on facts that would amount to securities *fraud*. It encompasses claims involving simple false statements. *See In re Kingate Mgmt. Ltd. Litig*, 784 F.3d 128, 151 (2d Cir. 2015). Second, it does not matter that PIMCO Funds announced once during the relevant timeframe that its emerging markets position was worth about 21% of the Fund's total value. That isolated snapshot of a disclosure, which was not made until three months into the class period, does not negate the likelihood that the continuing description of the Emerging Markets Policy as one of the Total Return Fund's "principal strategies" was false.

Finally, Hampton challenges the district judge's decision to dismiss his claims with prejudice and without leave to replead. As we explain in a simultaneously-filed opinion, the dismissal should have been without prejudice because SLUSA enacts a jurisdictional bar rather than a defense on the merits. We do not, however, disturb the district judge's decision that it would be futile for Hampton to replead state-law claims on a classwide basis. Because the representations in the Fund's prospectus were made continuously throughout the class period, it would be impossible for Hampton to plead that PIMCO Funds' investment practices diverged from its public statements without creating a likelihood that those statements were false at the time

they were made.

## CONCLUSION

For the reasons stated above and in our simultaneously-filed opinion, the judgment of the district court is **AFFIRMED** to the extent it concludes that Hampton's claims are barred, and **VACATED** to the extent it dismissed Hampton's claims with prejudice. The case is **REMANDED** for further proceedings consistent with this opinion.